UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ITALVERDE TRADING, INC. and
DELVERDE, SpA,

                  Plaintiffs,                        **MEMORANDUM & ORDER**

        - against -                       04-CV-2793 (NGG) (VVP)

FOUR BILLS OF LADING Numbered
LRNNN 120950, LRNNN 122950,
LRNN 123580, and MSLNV 254064
and SAVINO DEL BENE USA, INC.,

                  Defendants.
-----------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

     In this action, Delverde, SpA ("Delverde") and Italverde Trading, Inc. ("Italverde")—a

pasta manufacturer and its exclusive United States distributor, respectively (together

"Plaintiffs")—have sued Defendant Savino del Bene USA, Inc. ("Savino USA" or "Defendant")

for tortiously seizing Delverde pasta and selling it in the United States.  According to Savino

USA, its actions were justified by, among other things, an order issued by a court in Florence,

Italy that permitted the seizure to satisfy an outstanding debt.  In a decision dated April 10, 2007,

this court denied the parties' cross-motions for summary judgment on Plaintiffs' claims.  See

Italverde Trading, Inc. v. Four Bills of Lading, 485 F. Supp. 2d 187, 190 (E.D.N.Y. 2007)

("Italverde I").

     The parties are again before the court on cross-motions for summary judgment.  (See

Plaintiff[s'] Cross Motion for Summary Judgment (Docket Entry # 95); Defendant Savino Del

Bene USA, Inc.'s Motion for Partial Summary Judgment (Docket Entry # 96).)  Since the court's

prior denial of the parties' motions for summary judgment, a court in Chieti, Italy (the "Court of

Chieti" or the "Chieti Court") issued a decision that the parties agree bears on issues dispositive

of the claims litigated here.[1]  As set forth below, the court concludes that certain issues resolved

by the Court of Chieti should be recognized in this litigation, and therefore, as set forth herein,

Defendants' Motion is GRANTED and Plaintiffs' Motion is GRANTED in part.

## I.     BACKGROUND

The relevant background facts are not in dispute.[2]  During the period relevant to this

litigation, Savino USA and its parent company, Savino del Bene SpA ("Savino Italy"), provided

customs brokerage and freight forwarding services to Plaintiffs.  See Italverde I, 485 F. Supp. 2d

at 190-92.[3]  On March 10, 2004, the Civil Court of Florence issued an order (the "Florence Court

Order" or the "Florence Order") directing Delverde to immediately pay Savino Italy

€604,818.06 plus costs and interest that, according to Defendant, was to satisfy an outstanding

debt.  (Id. at 191; Defendant Savino USA's Memorandum in Support of Its Motion for Partial

Summary Judgment (Docket Entry # 96) ("Def. Mem.") 2.)  This order set out that "within 40

(forty) days of the date of service of this official document a challenge may be filed in the form

required by law and, if no challenge is filed, the Court will proceed with enforcement."  Italverde

I, 485 F. Supp. 2d at 191.

Within the forty days in which Delverde had to challenge the order, Savino Italy went

ahead and obtained an additional order from the Florence court authorizing the seizure of

---

[1] See Letter of Stephen H. Vengrow dated January 10, 2008 (Docket Entry # 92) ("[t]he proposed motion is predicated upon a recent order issued [by] the Italian court which involves the same parties and the same claims"); Letter of John M. Peterson, et al. dated May 22, 2008 (Docket Entry # 94) (motion for summary judgment based on "certain findings in Judgment No. 869/07 issued by the Court of Chieti, Italy . . .").

[2] A more detailed background is set forth in Italverde I.  For the purposes of this Memorandum and Order, familiarity with that decision, and with the facts giving rise to this dispute, is assumed.  Facts discussed in Italverde I are only summarized here.

[3] The court's earlier decision mistakenly identified Savino USA as the parent company.  Italverde I, 485 F. Supp 2d at 190.  Savino USA is the subsidiary of Savino Italy.  (See Verified Complaint dated June 30, 2004 (Docket Entry # 1) ("Complaint") ¶ 17; First Amended Answer and Affirmative Defenses (Docket Entry # 41) ¶ 17.)

Delverde assets that were in its possession.  Id.[4]  In response, on May 21, 2004 Delverde

requested an order from the Court of Chieti to enjoin efforts to enforce the Florence Court Order.

Id.  On May 27, 2004 the Chieti Court issued an injunction prohibiting Savino Italy "from any

and all enforcement activities as provided by the [Florence Court Order]" and subsequent

enforcement orders of the Florence Court.  (See Plaintiff[s'] Statement of Material Facts as to

Which No Genuine Issue Exists, dated April 28, 2006 (Docket Entry # 55), Ex. C.)

On May 27, 2004, Savino Italy sent a letter to Savino USA confirming that it had

assigned its interest in the debt that was the subject of the March 10 Order.  Italverde I, 485 F.

Supp. 2d at 192.[5]  This assignment was made so that Savino USA could "act as agent or

representative for [Savino Italy] relating to the Florence [C]ourt [O]rder."  (Mason Aff. Ex. E, at

20.)  At some point thereafter, in late-May 2004, Savino USA "asserted control" or "seized" 22

containers of Delverde pasta in transit from Italy to the United States.[6]  After this action, Savino

USA contacted Italverde, to whom Delverde intended the pasta be sold, and "offered to sell the

pasta in its possession to Italverde upon full payment of the full commercial invoice amount or

---

[4] As set forth in Italverde I, 485 F. Supp. 2d at 191, the Florence Court Order was served on Delverde on April 9, 2004 and the subsequent enforcement order was obtained on May 13, 2004, approximately a week before the 40-day window set out in the Florence Court Order was set to close.

[5] The parties' expert affidavits submitted with this motion state that the date for the assignment was May 21, 2004. These affidavits do not attach any supporting documentation for this—or any other—assertion.  Defendant's previous submission includes a letter dated May 27, 2004, that is not translated, offered as "a true and correct copy" of the May 27, 2004 letter of assignment from Savino Italy to Savino USA. (See Affidavit of Matthew C. Mason in Support of Defendant Savino Del Bene USA, Inc.'s Motion for Summary Judgment (Docket Entry # 52) ("Mason Aff.") ¶ 5 & Ex. B.)  An affidavit of a Savino USA manager states that the assignment took place on May 21, 2004, confirmed by a letter dated May 27, 2004.  (See Affidavit of Marco Sigrist dated June 14, 2006 (Docket Entry # 63) ¶ 3.)

[6] The parties do not provide citation to evidence in the record that clarifies the timing and nature of the "seizure" (according to Plaintiffs) or "assertion of control" (according to Defendant).  The parties appear to agree, however, that the disputed action took place in late May.  (See Plaintiff's Statement of Material Facts (II) as to Which No Genuine Issue Exists, dated  June 18, 2008 (Docket Entry # 95) ("Pl. Second 56.1") ¶ 5; Defendant Savino Del Bene USA, Inc.'s Summary of Facts and Response to Plaintiff's Statement of Material Facts as to Which No Genuine Issue Exists, dated July 2, 2008 (Docket Entries ## 95, 98, 99) ("Def. Second 56.1") ¶ B-5, 5; Plaintiff's Response to Defendant's Rule 56.1 Statement of Facts, dated July 15, 2008 (Docket Entry # 95) ("Pl. Second 56.1 Resp.") ¶ B-5.).)

posting a letter of credit." Italverde I, 485 F. Supp. 2d at 192. Savino USA subsequently

contacted the customers of Italverde, for whom the pasta was ultimately intended, informing

them that it wanted to sell them the pasta, and that it was entitled to do so based on the Florence

Court Order. Id. Savino USA sold fifteen of the containers to Italverde or its customers and

"sent the monies it collected to Savino Italy for application to Delverde's debt to Savino Italy."

(Defendant's Rule 56.1 Statement, dated April 28, 2006 (Docket Entry # 53) ("Def. First 56.1")

¶ 18.) There is a dispute concerning what happened to the remaining seven containers, but it

appears that they were released to Italverde and that the money paid for them was placed in

escrow. (See Def. First 56.1 ¶ 19; Plaintiffs' Response to Defendant's Rule 56.1 Statement,

dated June 15, 2006 (Docket Entry # 64) ("Pl. First 56.1 Resp.") ¶ 19.)

On July 2, 2004, Plaintiffs filed suit in this court alleging conversion (Count I), tortious

interference with contractual relations (Count III), interference with prospective business

relations (Count IV), breach of fiduciary duty (Count V), and trademark infringement (Count

VI). (See Complaint ¶¶ 45-93.)[7] In its Answer, Savino USA responded that, among other

things, its "actions taken regarding the subject goods and bills of lading were pursuant to the

[order of the Florence Court] . . . authorizing such acts." (First Amended Answer and

Affirmative Defenses (Docket Entry # 41), Affirmative Defenses ("Affirmative Defenses") ¶ 3.)

It also responded that its actions were taken "as the assignee of Savino Italy." (Id. ¶ 4.)

In Italverde I, the court denied the parties' cross-motions for summary judgment on

Plaintiffs' claims. 485 F. Supp. 2d at 187. The court concluded that genuine issues of material

fact existed regarding Plaintiffs' claims of conversion, tortious interference with contract, and

tortious interference with prospective business relations, id. at 201, 203, 205-07, and concluded

---

[7] Plaintiffs also brought an admiralty claim (Count II) not at issue here.

that insufficient briefing required denial of summary judgment on their claims of breach of fiduciary duty and trademark infringement, id. at 207, 210.[8]

In addition to these claims, the court also addressed whether Savino USA could assert, as a defense to Plaintiffs' claims, reliance on "the March 10 Florence Court Order directing Delverde to pay Savino Italy 604,818.06 euros plus costs and interest." Id. at 211. The only question before the court at the time was "whether a foreign judgment that had not been recognized prior to a civil action can serve as a defense to a civil claim raised in the answer." Id. at 213. In answering this question in the affirmative, the court recognized that "a foreign judgment may serve as a defense to a tort claim," but did not rule specifically on whether the Florence Court Order was a defense to claims based on the actions engaged in by Savino USA. Id. at 211-12. "[The] court . . . only [held] that the [Florence Court] Order—if valid—is as enforceable as a New York judgment would be. . . ," without opining on the contours of any defense based on that order. Id. at 214.

Since the time of this court's ruling on summary judgment, the litigation between Savino Italy and Delverde in Italy reached a final decision. On November 13, 2007, the Court of Chieti issued a final decision finding that the order of the Florence Court did not authorize Savino Italy to take actions to seize the containers of pasta. (See Def. Mem. Ex. 1 ("Chieti Decision"), at 16.)[9] In the Court of Chieti, Delverde brought a claim against Savino Italy seeking €15,000,000 for "damages incurred because of the failed observance of the [Court of Chieti's] order"

---

[8] Regarding the fiduciary duty count, there was insufficient briefing on Savino's "argument that it possessed a general lien over the pasta." Italverde I, 485 F. Supp. 2d at 207. Regarding the trademark claim, the parties had not adequately argued the applicability of the "first sale" doctrine to trademark claims. Id. at 210.

[9] The procedural background of the various proceedings in Italy are not fully illuminated by the parties' submissions. For example, they do not explain whether this is the same Court of Chieti that enjoined enforcement of the Florence Court Order. A translation of the Chieti Decision appears at Docket Entries ## 95 & 96; a different translation of the Chieti Court's decision appears as Annex 2 to the Affirmation of Giancarlo Tittaferrante dated June 17, 2008 (Docket Entry # 95) ("Tittaferrante Aff.") ("Annex 2 Translation").

prohibiting enforcement measures based on the Florence Court Order.  (See Chieti Decision 6-7.)[10]  The Court of Chieti found that Savino Italy was not entitled to take action against Delverde pursuant to the Florence Order.  (See id. at 12-14.)  At the same time, however, the Chieti Court rejected Plaintiff Delverde's "claim for compensation" against Savino Italy because of a lack of damages to Delverde resulting from the seizure, and a lack of "causality between the asserted decrease in sales on foreign markets and the enforcement actions promoted against [Delverde]." (Id. at 15, 14-16.)

The parties' cross-motions for summary judgment both rely on the Chieti Decision in support of their respective positions before this court.  Their positions, however, rely on conflicting interpretations of that decision.  According to Savino USA, the Court of Chieti's resolution of the claims Delverde brought against Savino Italy "cover[ed] identical issues of law and fact" as those here.  (Def. Mem. 1.)[11]  Specifically, Savino USA argues that, because both the Italian litigation and this litigation arise out of the "seizure and sale of 22 containers of pasta," application of "collateral estoppel" precludes Delverde from "claiming damages as a result of the [Chieti Decision]."  (Id. at 2 ("Delverde is estopped from claiming damages as a result of the [Chieti Decision], which ruled Delverde was already insolvent at the time of the seizure of pasta, and thus, was—as an insolvent entity—incapable of sustaining any damage as a matter of law."); see also id. at 6-7.)[12]

---

[10] Delverde had been declared bankrupt and a receiver was appointed to represent the company.  (See Chieti Decision 9 (discussing Delverde's bankruptcy); Affirmation of Giancarlo Tittaferrante dated June 17, 2008 (Docket Entry # 95) ("Tittaferrante Aff.") ¶ 1 (describing himself as attorney for Delverde bankruptcy estate); Affidavit of Carlo Bossi dated June 20, 2008 (Docket Entry # 95, 98, 99) ("Bossi Aff.") ¶ 21 (describing Chieti Decision as "adjudicating bankruptcy"); Chieti Decision 1, 9.)

[11] As Defendant's submissions are not numbered, the court has determined on its own page numbers for each submission.  Defendant is directed to provide page number in any future submissions.

[12] Savino does not seek the application of collateral estoppel against Plaintiff Italverde.  (See Defendant Savino's Reply Memorandum in Support of Its Motion for Partial Summary Judgment and Response Memorandum in Opposition to Delverde's Motion for Summary Judgment (Docket Entry # 95, 98, 99) ("Def. Reply") 3 n.2.)

In response, Plaintiffs argue that collateral estoppel cannot be applied to bar Delverde's claims. Plaintiffs contend that the Chieti Decision did not address any claims against Savino USA, because the Chieti Court denied Savino Italy's attempt to implead Savino USA in the case. (See Plaintiffs' Memorandum in Opposition to Defendant's Motion and in Support of Its Cross Motion for Summary Judgment (Docket Entry # 95) ("Pl. Mem.") 3-4.) Plaintiffs also dispute Defendant's characterization of the Court of Chieti's holding regarding damages. Plaintiffs contend that the Chieti Court "refused to issue a decision in regards to damages resulting from the seizure of the 18 bills of lading because Savino Italy no longer had rights to them [i.e., because they were assigned to Savino USA], and in fact was not the party effecting such seizure and other enforcement actions [i.e., Savino USA was]." (Id. at 11.) In other words, Plaintiffs' response to Defendant's Motion relies principally on the distinction between Savino Italy and Savino USA—specifically, the fact that Savino USA, Defendant in this action, was not a party to the Chieti Decision. (Pl. Mem. 3-4, 12.)

Nevertheless, in their own Motion for Summary Judgment, Plaintiffs argue that the Chieti Decision does apply in order to prevent Defendant Savino USA from relying on the Florence Court Order in its defense. According to Plaintiffs, the Court of Chieti "has left no doubt that the March 10 [Florence] Order was and is invalid," and that, therefore, Defendant has no defense to its claims. (Id. at 15-17.) With this defense unavailable to Defendants, Plaintiffs contend, they are entitled to summary judgment on their claims.[13] Defendant responds to this motion by arguing that Savino USA cannot be collaterally estopped by the Chieti Decision because Savino USA was not a party before the Chieti Court. Defendant also argues that, besides reliance on the

---

[13] In requesting this relief, Plaintiffs state that "this Court has already determined that plaintiffs have established the majority of their claims made in the complaint." (Pl. Mem. 17.) While the court's Memorandum and Order in Italverde I indicated that Plaintiffs met their burden in showing that no genuine issue of material fact existed as to elements of most of its claims, it denied summary judgment on all claims because of issues of material fact and insufficient briefing relating to the claims and defenses in this action.

Florence Order, it has invoked other justifications for its seizure—specifically a "general lien over all the goods." (See Def. Reply 13-14.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex v. Catrett, 477 U.S. 317, 322 (1986). The court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Eastman Mach. Co., Inc. v. United States, 841 F.2d 469, 473 (2d Cir. 1988). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the nonmoving party. Anderson, 477 U.S. at 249. In conducting its analysis, the court must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's favor, and construe the facts in the light most favorable to the nonmoving party. Id. at 254-55; Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995).

## III.  DISCUSSION

In their briefing, the parties do not present a clear picture of the procedural and factual background of the Italian litigations, nor do they fully explain the issues presented to the Chieti Court for decision. Although the Chieti Decision itself provides a helpful guide to the issues before the court, the translations submitted by the parties leave it difficult to decipher all the issues presented. This is particularly true in light of the Chieti Decision's reliance on aspects of Italian law that are not fully explained by the parties' Italian law experts. Nevertheless, there appears to be agreement among the parties about the underlying factual basis for their respective motions, and the parties' disagreement primarily concerns the legal ramifications of the facts.

Although the court is disinclined to derive the factual background of the Chieti Decision entirely from the text of the Chieti Decision, sufficient facts are provided by that decision—when considered with the parties' expert affidavits and other facts the court has located in previous submissions—for the court to rule on the parties' respective motions.

### A. Defendant's Motion for Summary Judgment

Defendant Savino USA argues that the Chieti Decision's conclusion that Delverde did not sustain damages as a result of its seizure precludes Delverde's claims for damages in this litigation. Specifically, Savino USA seeks the application of collateral estoppel against Delverde for its claim under Count V for breach of fiduciary duty.[14] "[B]efore a court can evaluate the preclusive effect of a foreign judgment, it must apply the doctrine of comity to determine whether that judgment is entitled to recognition." Apostolou v. Merrill Lynch & Co., No. 06-cv-4944(RJD)(LB), 2007 WL 2908074, at *4 (E.D.N.Y. Oct. 5, 2007) (citing Alfadda v. Fenn, 966 F. Supp. 1317, 1325 (S.D.N.Y.1997)); see also Koehler v. Bank of Bermuda Ltd., No. M18-302(CSH), 2004 WL 444101, at *8 (S.D.N.Y. Mar. 10, 2004). "International comity is 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience.'" Republic of Colombia v. Diageo North America Inc., 531 F. Supp. 2d 365, 412 (E.D.N.Y. 2007) (quoting Hilton v. Guyot, 159 U.S. 113, 164 (1895)).

Delverde's claim for breach of fiduciary duty is a diversity claim arising under New York law. Regarding diversity claims, "the law of the forum [state] with respect to comity should be

---

[14] This court previously determined that only Italverde, and not Delverde, brings a claim under Count I for conversion. Italverde I, 485 F. Supp. 2d at 194. Similarly, the Complaint only alleges claims for tortious interference under Counts II and IV by Italverde, not Delverde. (See Complaint ¶¶ 63-76.) Count VI for trademark infringement only alleges damages sustained by Italverde. (Id. ¶ 93.) The Complaint does allege damages sustained by Delverde in Count V for breach of fiduciary duty; accordingly, it is on this Count that Savino USA seeks partial summary judgment.

applied." Alesayi Beverage Corp. v. Canada Dry Corp., 947 F. Supp. 658, 663 (S.D.N.Y. 1996);

see also Nippon Emo-Trans Co., Ltd. v. Emo-Trans, Inc., 744 F. Supp. 1215, 1226-27 (E.D.N.Y.

1990). New York courts have traditionally been liberal in recognizing foreign judgments. CIBC

Mellon Trust Co. v. Moral Hotel Corp., 100 N.Y.2d 215, 221 (2003) (citing examples). They

have recognized "judgments rendered in a foreign country under the doctrine of comity absent

some showing of fraud . . . or that recognition of the judgment would do violence to some strong

public policy of [the] state." Sung Hwan Co., Ltd. v. Rite Aid Corp., 7 N.Y.3d 78, 82 (2006);

see also N.Y. C.P.L.R. § 5304.

There is no dispute that the Chieti Decision is entitled to recognition under the doctrine of

international comity. Neither party raises the issue of comity and both rely on the Chieti

Decision in support of their respective motions for summary judgment. Accordingly, there has

been no showing of fraud, the violation of any strong public policy of New York, or the lack of

jurisdiction with respect to the Chieti Court. The court therefore recognizes the Chieti Decision.

Such recognition, however, does not resolve Defendants' contention that Delverde should be

precluded based on the Chieti Decision.

If a foreign court's judgment is final and enforceable in the forum state, it can be used to

preclude a claim or issue in a domestic court. Alesayi Beverage Corp., 947 F. Supp. at 664

(citing Scheiner v. Wallace, 832 F. Supp. 687, 693 (S.D.N.Y. 1993)); Voreep v. Tarom

Romanian Air Transport, No. 96-cv-1384(LMM), 1999 WL 311811, at *3 (S.D.N.Y. May 18,

1999) (doctrine applies to "matters decided by courts of foreign countries"). "[A] federal court

should normally apply either federal or state law, depending on the nature of the claim, to

determine the preclusive effect of a foreign country judgment." Alfadda, 966 F. Supp. at 1329;

see also Taveras v. Taveraz, 477 F.3d 767, 783 (6th Cir. 2007); but see Voreep, 1999 WL 311811, at *3 ("Cases addressing this choice of law issue are in considerable conflict.").

This claim arises under the law of New York, so New York preclusion law applies. Alesayi Beverage Corp., 947 F. Supp. at 664. Under New York law, collateral estoppel "may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a 'full and fair opportunity' to litigate." Fuchsberg & Fuchsberg v. Galizia, 300 F.3d 105, 109 (2d Cir. 2002). The issue previously litigated must have been "decisive of the present action"—i.e., it would "prove or disprove, without more, an essential element of any of the claims set forth in the complaint." Curry v. City of Syracuse, 316 F.3d 324, 331, 332 (2d Cir. 2003). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue." Evans v. Ottimo, 469 F.3d 278, 282 (2d Cir. 2006) (citing Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 456 (1985)).

The court concludes that the Chieti Decision precludes Delverde from re-litigating the issue of whether it suffered damages from the seizure and sale of its pasta. As set forth in the Chieti Decision, Delverde sued Savino Italy for €15,000,000 "as compensation for the damages incurred because of the failed observance" of the Court of Chieti's earlier order preventing enforcement of the Florence Order. (Chieti Decision 6-7.) The Chieti Decision specifically set forth that, regarding damages, Delverde "already found itself in a serious and irreversible state of financial difficulty, which would lead to the declaration of bankruptcy a few months thereafter[,]" and that "no damage to the commercial image [of Delverde] can be recognized, as

this requires the ability of the business to survive and continue operating in the market." (Id. at 14.) The Chieti Decision then went on to explain that:

> The Court of Lanciano and the Court of Milan respectively held that . . . [Delverde's] bankruptcy Receiver has not proved that the goods seized by the sued company have been partly sold to American and Canadian customers; and that, finally, the bankruptcy Receiver has not proved the impossibility for [Delverde] to adequately supply their customers in consequence of the actions taken by [Savino USA] and by [Savino Italy], nor has he proved causality between the asserted decrease in the sales on foreign markets and the enforcement actions promoted against the company. In light of the above considerations, the claim for compensation cannot be accepted.

(Id. at 15.)

As mentioned above, the parties do not provide much clarity on the precise scope of the issues before the Court of Chieti or the procedural background of that litigation, and the Chieti Decision itself appears to rely on intricacies of Italian law not fully illuminated by the parties' experts. Nonetheless, it appears from the face of the Chieti Decision that before the Italian court was the issue of whether Delverde, which was bankrupt, had sustained damages as a result of the actions of Savino USA and Savino Italy. The Court of Chieti concluded that, under Italian law, it had not.[15]

With this in mind, the court concludes that the issue on which the Court of Chieti ruled was whether the same actions of Savino USA and Savino Italy at issue in this case caused damage to Delverde. The Court of Chieti adjudicated the claims of a bankrupt entity, Delverde, arising out of the same facts—the seizure of 22 containers of pasta by Savino Italy and Savino USA—and concluded that, on the factual issues of damages and causation, the bankrupt

---

[15] Plaintiffs do not argue that substantive differences between American and Italian law should lead to a contrary result; and, in any case, this would not necessarily prevent recognition of Chieti Decision to preclude re-litigation of issues decided in the Chieti Court. See, e.g., 18 Moore's Federal Practice § 130.52[2] (3d ed. 2008) ("A difference in the laws between the rendering jurisdiction and the place where recognition is sought is insufficient to preclude recognition."); cf. N.Y. C.P.L.R. § 5304(b)(4) (requiring foreign cause of action to be repugnant to the public policy of this state" for non-recognition). Plaintiffs only argue, erroneously, that all issues and parties must be the same to apply issue preclusion. (See Pl. Reply 13-19.)

Delverde had not shown it was entitled to relief. This identity of issues—regardless of whether the contours of the particular claims or causes of action in the Italian litigation are precisely the same—is sufficient for issue preclusion. See 18 Moore's Federal Practice § 132.01[1] (3d ed. 2008) ("Under the doctrine of issue preclusion, or collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party (or privy) to the prior litigation."); Ryan v. New York Telephone Co., 62 N.Y.2d 494, 500 (1984) (issue preclusion applicable "whether or not the tribunals or causes of action are the same").

In arguing against the application of preclusion, Plaintiffs contend that the Court of Chieti did not actually rule on damages with regard to the 22 containers because Savino Italy had renounced its claims and assigned them to Savino USA, a party not before the Court of Chieti. (See Pl. Mem. 12 (arguing that the Court of Chieti "could not issue a decision in regards to the 18 bills of lading because such claims were assigned to Savino USA, a non-party . . .").) But it is not significant for the purposes of preclusion against Delverde whether Savino USA was a party in the litigation before the Court of Chieti.[16] Defendant seeks to preclude Delverde from re-litigating the issue of whether it sustained damages based on the actions of Savino USA and Savino Italy to seize and sell 22 containers of its pasta. The question is not whether Savino USA was a party, but rather, whether Delverde was. Delverde had a full and fair opportunity to litigate the issue of its damages, and it can thus be precluded from re-litigating that issue. Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury, 270 Fed. Appx. 52, 54 (2d Cir. 2008)

---

[16] In any case, the Chieti Decision makes clear that Savino USA was involved, to some extent, in that litigation. According to the Chieti Decision, Delverde filed claims against Savino Italy, but did not bring claims against Savino USA (Chieti Decision 10-11 ("[t]he plaintiff has filed no claims against [Savino USA] in this lawsuit, although it has represented, in its summons, that most of the seizures were indeed carried out, to its detriment, just by the American company").) Savino Italy, nonetheless, sought to implead Savino USA by asserting a claim against it before the Court of Chieti. (Id. at 10.) Savino USA later "accepted [Savino Italy's] renunciation to the claim, with costs offset . . .[,]" and the court "declare[d] the extinction due to renunciation" of the suit between Savino Italy and Savino USA. (Id. at 10, 16.)

("Under non-mutual collateral estoppel, if a litigant has had an opportunity to fully and fairly litigate an issue and lost, then third parties unrelated to the original action can bar the litigant from relitigating that same issue in a subsequent suit."); Schuh v. Druckman & Sinel, L.L.P., No. 07-cv-366(LAK)(GWG), 2009 WL 129851, at *11 (S.D.N.Y. Feb. 2, 2009) (under New York law "collateral estoppel can be invoked, either offensively or defensively by a non-party to the litigation") (citation omitted); Koch v. Consolidated Edison Co., 62 N.Y.2d 548, 557 (1984) ("We have been committed . . . to the proposition that efficient utilization of the judicial system is served by preclusion of relitigation of issues as to which a litigant has had a full and fair opportunity for resolution, irrespective of the identity of his particular opponent.").

Although Delverde did not make claims against Savino USA, the Chieti Decision relied upon the actions taken by both Savino USA and Savino Italy in determining whether Delverde had suffered damages, and Delverde had "represented . . . that most of the seizures were . . . carried out . .. just by [Savino USA]." (Id. at 11.) The Chieti Court's determination regarding damages and causation did not appear to distinguish between the actions Savino USA and Savino Italy, relying primarily on the relationship of those actions to the claimed damages, as well as the inability of a bankrupt entity to sustain ongoing damages. Accordingly, the distinction between Savino USA and Savino Italy does not alter the preclusion analysis in this case.

In sum, Delverde's claims arising from the seizure and sale of the containers of pasta was litigated before the Court of Chieti. In particular, Delverde litigated and lost on the issue of whether any of it sustained any damages as a result of the actions of Savino Italy and Savino USA. The court will, therefore, apply collateral estoppel to preclude Delverde from re-litigating this issue here with respect to Delverde's damages claim for breach of fiduciary duty under Count V. Summary judgment is therefore granted to Defendant on Delverde's Count V.

In concluding that preclusion is appropriate, the court observes that the parties have explained that the Court of Chieti was litigating the claims by and against Delverde as a bankrupt entity. Recognition of the proceedings of foreign tribunals "is particularly appropriate and important with respect to foreign bankruptcy proceedings, where equitable principles demand that all claims against a debtor's limited assets be addressed in a single proceeding." Ecoban Finance Ltd. v. Grupo Acerero Del Norte, S.A. de C.V., 108 F. Supp. 2d 349, 35152 (S.D.N.Y. 2000) (citing New York and federal law). In addition to the reasons set forth above, the court is disinclined to allow the bankrupt Italian entity, having adjudicated claims in an Italian court, to proceed here on an issue already decided by the Italian court.[17]

### B.    Plaintiff's Cross-Motion for Summary Judgment

Plaintiffs rely on the Chieti Decision to argue that Defendant Savino USA no longer has a justification defense based on the Florence Court Order. They argue that the Chieti Decision makes clear that the Florence Court Order, on which Defendant relies in its defense, is not a valid judgment entitling Savino USA to seize its goods. In response, Defendant Savino USA argues that the Chieti Decision did not make any determination about its rights under the Florence Court Order because that court only adjudicated the defense relating to its parent company, Savino Italy. It also offers a separate defense to Plaintiffs' claims—in particular, that it had a general lien over Plaintiffs' pasta which permitted it to take the actions that it did.

### 1.    Defense Based on the Florence Court Order

Defendant construes Plaintiffs' Motion as a request to apply collateral estoppel to the issue of whether the Florence Court Order is valid, arguing that it cannot be estopped by the

---

[17] Notably, Defendant does not seek, and the court's ruling does not address, the claims of Italverde based on the same transactions. There has been no argument made that Italverde should be precluded from re-litigating the damages component of its claims. Even if this were the case, the Chieti Decision's ruling on damages relied, at least in part, on the bankruptcy status of Delverde that is, apparently, specific to that entity. Accordingly, the issue decided in the Chieti Decision would not preclude Italverde from litigating that issue here.

Chieti Decision (which ruled as such) because that litigation involved its parent company. (Def. Reply 13.) Plaintiffs respond that they do not rely on the Chieti Decision as a matter of issue preclusion, but rather, based on the failure of Savino USA to provide facts establishing a defense to its claims. (See Pl. Reply 4.) In particular, Plaintiffs argue that their Motion is based on this court's prior denial of summary judgment, which ruled that Defendants could only establish a defense if it could establish that the Florence Court Order was a final and valid judgment. (Pl. Reply 5.) Plaintiffs argue that Savino USA has failed to present evidence that its actions were based on such a judgment, and that the Chieti Decision demonstrates that the Florence Court Order was invalid. (Id.)

The court previously held that "the Florence Court Order—if valid—would have permitted Savino [USA] to seize property that it could have seized had the Florence Court Order been a New York judgment." Italverde I, 485 F. Supp. 2d at 213 (emphasis added).[18] Plaintiffs now argue that Defendant has failed to come forward with contested issues of fact regarding whether its actions to seize the containers of pasta were justified by a valid and enforceable judgment and rely on the Chieti Decision, which "left no doubt that the [Florence Court Order] was and is invalid." (Pl. Mem. 16.)

The Chieti Decision concluded that a defense to the seizure of the containers based on the Florence Court Order was unavailable to Savino Italy because of defects in that order. It ruled

---

[18] The issue previously before the court was whether Savino USA had to first obtain recognition of its judgment in New York in order to take actions pursuant to that order. Italverde I, 485 F. Supp. 2d at 211 ("Plaintiffs argue that, even assuming arguendo that the March 10 Florence Civil Court Order was valid, Savino [USA]'s seizure, retention, and sale of the pasta was somehow 'wrongful' or 'invalid' because Savino [USA] failed to follow New York's procedures for obtaining recognition and enforcement of an order or judgment of a foreign court."). Based on its reading of the Uniform Foreign Country Money Judgments Recognition Act, the court concluded that a valid foreign money judgment could be raised as a defense "even though the foreign judgment had not been recognized by an American court at the time the conduct that was the basis for a tort claim was committed." Id. at 212.

Plaintiffs' motion involved this limited issue, and the court did not opine on the scope or merits of Defendant Savino USA's defense. For example, the court explicitly declined to decide "whether, as a matter of substantive law, a money judgment against Delverde in favor of Savino Italy is a meritorious defense against any of the claims that Plaintiffs have stated." Id. at 214. Moreover, neither the court nor the parties "addressed what effect, if any, the Florence court order permitting Savino Italy to seize the pasta containers has on this case." Id.

that the Florence Court Order could not justify a seizure of the containers because it was "pronounced with an ambiguous formula[,]" and that "the imprecision and ambiguity of the formula adopted for the injunction could not be interpreted to the advantage of the creditor[, i.e., Savino Italy]." (Chieti Decision 12.) As explained in the Chieti Decision, "although [the Florence Court Order] contained the order for the debtor [Delverde] to immediately pay . . . , the decree also included a notice that a forced performance would be initiated, <u>unless an opposition was submitted according to the legal forms within the term of 40 days from the notification [to Delverde] of the order</u>." (Chieti Decision 12 (emphasis added).) That is, the Chieti Decision found that the Florence Court Order gave immediate effect to its order of immediate payment, but also gave 40 days to oppose the order before it would take effect. According to the Chieti Decision, Savino Italy obtained an enforcement order[19] from the Florence Court <u>within</u> the 40-day time limit provided for by the Florence Court Order, which was "invalid, as it was pronounced before the expiry of the term of 40 days previously assigned to [Delverde] to fulfill the obligation or file an opposition." (<u>Id.</u> at 13.) In addition, the Chieti Decision concluded that the seizures were invalid on account of the subsequent prohibition against enforcement of the Florence Court Order issued by the Court of Chieti. (<u>Id.</u> at 3, 13.) Because the seizures proceeded in spite of notification to Savino Italy about the injunction of the Chieti Court, the seizures were unlawful. (<u>Id.</u> at 13-14.)

Savino USA argues that the Chieti Decision's ruling regarding the validity of the Florence Court Order does not extend to it, because it was not a party to that order. Accordingly, although the Chieti Decision makes clear that the Florence Court Order was not a valid order pursuant to which Savino Italy could take enforcement actions, Savino USA argues that, as a

---

[19] This document is called an "enforcement formula" in one translation, and an "enforcement order" in the other. (<u>See</u> Chieti Decision 3; Annex 2 Translation 3.)

separate entity, it could take such action.  (See Tittaferrante Aff. ¶ 19.)  In essence, Savino USA

argues that its actions were justified by the Florence Court Order even though it was not a party

to that order, while at the same time arguing that it is not bound by the Chieti Injunction (and the

subsequent Chieti Decision) invalidating the Florence Court Order because it was not a party to

those orders.  Conceding that its rights under the order derive from the rights of Savino Italy, it

contends that these rights should be considered differently from those of Savino Italy, which

have been determined by the Chieti Court not to justify seizure of Plaintiffs' goods.  In spite of

this reasoning, it appears to the court that, if Savino USA can claim reliance on the favorable

Florence Court decision to which it was not a party, it should also be bound by the unfavorable

Chieti Court decision to which it was not a party, in light of its relationship as agent, subsidiary

and assignee of Savino Italy.

Considered as a matter of issue preclusion, as Defendant Savino USA urges, Savino USA

can be precluded as a privy of Savino Italy.  A prior action can preclude not only parties in that

action, but also their privies.  Buechel v. Bain, 97 N.Y.2d 295, 303-04 (2001).  "[P]rivity is an

amorphous concept not easy of application and includes those who are successors to a property

interest."  Id. at 304.  "In the end, the fundamental inquiry is whether relitigation should be

permitted in a particular case in light of ... fairness to the parties, conservation of the resources of

the court and the litigants, and the societal interests in consistent and accurate results.  Id.

This concept extends to the assignor-assignee relationship.  See Gramatan Home

Investors Corp. v. Lopez, 46 N.Y.2d 481, 487 (1979).  In this case, Savino USA received an

assignment of the Florence Court Order from Savino Italy, relied on the Florence Court Order to

effectuate its seizure, and sent the money it collected from the seizure to Savino Italy.  Savino

USA is claiming to derive its justification to act as an assignee from Savino Italy of the debt due

under the Florence Court Order. Issue preclusion, therefore, extends not only to Savino Italy, but also to Savino USA as Savino Italy's assignee. See Howard v. Town of Bethel, 481 F. Supp. 2d 295, 302 (S.D.N.Y. 2007) ("as a successor to his property interest, Abramson is in privity with Howard and is subject to collateral estoppel in the same manner as his grantor"); cf. Golden State Bottling Co., Inc. v. NLRB, 414 U.S. 168, 179 (1973) ("Persons acquiring an interest in property that is a subject of litigation are bound by, or entitled to the benefit of, a subsequent judgment[.]"). [20]

Moreover, as a matter of "fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results." Buechel, 97 N.Y.2d at 304, preclusion is appropriate. The undisputed facts establish that the Florence Court Order and the accompanying enforcement orders were issued in proceedings to which Savino USA was not a party and were invalidated in proceedings to which Savino USA was not a party. The Florence Court Order was assigned to Savino USA amidst the parties' intensive litigation relating to Savino Italy's entitlement to take actions pursuant to that order. Indeed, the assignment to Savino USA was "confirmed" on the very same day the Chieti Court concluded that enforcement actions could not be taken by Savino Italy. A court in Italy has now determined that Savino Italy was not entitled to take enforcement action based on the Florence Court Order, and the court concludes that it would be a waste of resources for this court to re-litigate the

_____

[20] Although the parties do not address the issue, in Gramatan Home Investment, the Court of Appeals explained that "[i]n the assignor-assignee relationship, privity must have arisen after the event out of which the estoppel arises," because "[i]n that situation, at the time the assignee succeeded to the rights of the assignor, the subject matter of the assignment was then embroiled in litigation and was subject to the claims of third parties and the assignee is charged with notice that his rights to the assignment are subject to competing claim." 46 N.Y.2d at 487. Here, the assignment took place on May 21, while the parties had been embroiled in litigation regarding Delverde's debt since March 10. Savino USA was also acting as the "agent" for Savino Italy. Mason Aff. Ex. E, at 20; see Tepper v. Bendell, No. 01-cv-6226(SWK), 2004 WL 2210309, at *3 (S.D.N.Y. Sept. 30, 2004) ("In situations where successive defendants share vicarious liability or their relationship can be characterized as principal/agent, a suit brought against either of the Defendants will foreclose a subsequent action against the other."). As a subsidiary of Savino Italy that assigned the Florence Court Order as its agent for debt collection, Savino USA was on notice that its rights under the Order were subject to litigation in which the parties were embroiled.

propriety of actions taken under that order, when the issue has already been resolved the Chieti Court, before which the same parties or their privies were present.[21]  It would also be unfair to allow Savino USA to claim reliance on the parts of the Chieti Decision that work to its benefit, while at the same time disclaiming those portions it finds to be detrimental.  Accordingly, Savino USA cannot evade the Chieti Court's decision regarding entitlement to act upon the Florence Court Order.

       2.    <u>Defense Based on a General Lien</u>

Finally, the court addresses Defendant Savino USA's offer of other affirmative defenses to Plaintiffs' claims.  Plaintiff has moved for summary judgment on its case, arguing that Defendant no longer has a defense based on the Florence Court Order.  In response, Defendant relies on an additional defensive theory that, it claims, is independent of its reliance on the Florence Court Order.  It argues that it held "a general lien over all the goods under the terms of the bills of lading and the customs power of attorney." (Def. Reply 13.)  For this argument, Savino USA relies on the affidavit of its Italian law expert, Carlo Bossi, to argue that "Article 14 of the Bills of Lading" as well as the "Customs Power of Attorney" provide Savino Italy, and its assignees the  right to a lien against Delverde's goods.  (Bossi Aff. ¶ 20.)  Besides this affidavit, Savino USA has not included with its briefing the documentary evidence on which it relies, or any other evidence to support its defense.

---

[21] In reaching this conclusion, the court rejects Defendant's argument that, "whether or not the Florence [Court O]rder is currently valid is simply not the issue," because "Savino was justified in enforcing the Florence Court Order <u>at the time</u> Savino seized the goods." (Def. Reply 11 (emphasis added).)  For this proposition, Defendant relies on the fact that the Florence Court itself ordered that the injunction would be "temporarily enforceable." (Def. Reply 12.)  Yet, the Chieti Decision explicitly concluded that the Florence Court Order was <u>not</u> temporarily enforceable, reasoning that actions taken to enforce the Florence Court Order in the period immediately after that order were invalid on account of defects in the Florence Court Order.  That is, according to the Chieti Decision, the Florence Court Order was not a valid basis upon which to seize Plaintiffs' goods at the time Savino Italy and Savino USA took the actions they did.

Plaintiffs point out that "aside from the fact that Savino has never identified the specific bills of lading in question . . . the further fact remains that defendant <u>Savino USA is not a party to any of the bills of lading, and cannot assert any lien rights thereunder</u>."  (Pl. Reply 8 (emphasis in original).)  Moreover, Plaintiffs argue that "there is no evidence to suggest that defendant Savino USA is the assignee of rights under any bill of lading involved here.  The only assignment of right which Savino USA claimed to have received was an assignment of the rights of its parent company . . . under the Florence Court [O]rder . . . .  If there was any separate assignment by Savino Italy of its rights under particular bills of lading, Savino USA has not identified it to the court."  (<u>Id.</u>)  Similarly, Plaintiffs point to a lack of evidence regarding the asserted lien under the Customs Power of Attorney.  (<u>Id.</u> at 11-12.)

Savino USA did not include the assertion of a general lien as one of its affirmative defenses, but relied generally on rights assigned by Savino Italy.  (<u>See</u> Affirmative Defenses ¶ 4.) In its prior decision, this court observed that "Savino [USA had] failed to adequately brief its argument that it possessed a general lien over the pasta."  485 F. Supp. 2d at 207.  In current briefing regarding its defenses, Savino USA has failed to adequately set forth argument or sufficient documentation regarding a general lien defense.  While Savino USA has stated that the relevant bills of lading and a power of attorney expressly provide for a lien in favor of Savino Italy and its assignees, Savino USA has presented no evidence relating to its position.  Savino USA's expert affidavit—the  only evidence included with its briefing—merely states that "Art[icle] 14 of the Bill of Lading" gives Savino Italy the right to collect from its debtors.  (Bossi Aff. ¶ 20.)  In these circumstances, the court deems it appropriate to grant summary judgment to Plaintiffs on this asserted affirmative defense.

Savino USA has not submitted any of the bills of lading on which it relies, nor has it provided any documentation which would show that a lien in favor of Savino Italy was assigned to Savino USA, or that Savino USA was otherwise entitled to exercise any such rights. Moreover, as Plaintiffs point out, "absent from Savino's initial Rule 56.1 Statement of Facts is any reference to record evidence that Savino ever asserted lien provisions under the bills of lading, shipping invoices, or Customs Power of Attorney." (Pl. Reply 10.)[22] The court has nonetheless reviewed the bill of lading and "Power of Attorney" submitted with Defendant's opposition to Plaintiffs' previous motion for summary judgment as Defendant's evidence in support of a general lien. (See Affidavit of Michael C. Mason, dated June 15, 2006 (Docket Entry # 62) ("Mason Aff. II"), Ex. A.) This bill of lading is claimed to be "representative of the bills of lading pertinent to this action." (Mason Aff. II ¶ 3.) The court has also reviewed a "Power of Attorney" attached to that document. (Id. Ex. D.) The bill of lading provides for "a general lien on the Goods" in favor of the "Carrier," which appears to be defined as Savino Italy. The Power of Attorney appears to be a blank form, and does not appear to have been signed by any parties. (See id. Ex. D.)

These documents do not provide sufficient support to preclude summary judgment on Savino USA's defense. As Plaintiffs point out, even if the "representative" bill of lading were sufficient regarding a lien in favor of Savino Italy, it is insufficient with regard to Savino USA, which is not named in that document. And, although Savino USA claims to be an assignee of the rights of Savino Italy, the only assignment for which there is evidence relates to the Florence Court Order, not to any rights under particular bills of lading. (See, e.g., Def. First 56.1 ¶ 10

---

[22] In general, both Plaintiffs' and Defendant's Rule 56.1 Statements selectively quote from the Chieti Decision and make numerous conclusory allegations. A Rule 56.1 statement, however, "is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." New York Civil Liberties Union v. Grandeau, 528 F.3d 122, 132 (2d Cir. 2008) (quoting Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001)).

("Savino Italy assigned its rights under the Florence Court Order to Savino [USA], which assignment was confirmed by letter dated May 27, 2004."); Mason Aff. Ex. E (Vice President and General Counsel stating that "[m]y understanding was that the assignment authorized [Savino USA] to act as agent or representative for [Savino Italy] relating to the Florence [C]ourt [O]rder."))[23]

The court concludes that Savino USA has not satisfied its burden on summary judgment to bring forth evidence supporting its defense. See FDIC v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) ("Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense-on which the defendant bears the burden of proof at trial-a plaintiff 'may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element] of [the non-moving party's case]."). The court, therefore, grants Plaintiffs' Motion for Summary Judgment with respect to Savino USA's defense based on a general lien.

## IV.    CONCLUSION

The disputed issues in the parties' motions surround the significance of actions taken pursuant to litigation in the courts of Italy. A court in that country, the Court of Chieti, has now ruled, and the parties are precluded from re-litigating issues decided by that court. Delverde had the opportunity in Italy to litigate the issue of damages resulting from the actions of Savino Italy and Savino USA, and the court applies collateral estoppel to preclude re-litigation of that issue. Defendant's Motion for Summary Judgment on Count V is thus granted. Regarding Plaintiffs' Motion, the Chieti Decision concluded that the Florence Court Order was not a valid order permitting Savino Italy, the recipient of that order, to take enforcement actions against Plaintiffs.

---

[23] The only document the court has located that evidences an assignment is an untranslated letter dated May 27, 2004—two lines long—which the parties have relied on as the assignment of rights under the Florence Court Order. (Id. Ex. B.)

As assignee, agent and subsidiary of Savino Italy, Defendant may not relitigate that issue here. Moreover, Defendants' other defenses are without sufficient evidentiary support. The court, therefore, grants summary judgment to Plaintiffs, to the extent that Plaintiffs seek to strike Defendant's affirmative defenses based on the Florence Court Order and a general lien.[24]

The parties shall contact Magistrate Judge Viktor V. Pohorelsky for the purpose of setting a schedule for submitting a Proposed Pre-trial Order. At that time, counsel shall notify Judge Pohorelsky as to whether settlement discussions or mediation would be productive.

SO ORDERED.
Dated: February 27, 2009                          /s/ Nicholas G. Garaufis
Brooklyn, New York                        NICHOLAS G. GARAUFIS
                                          United States District Judge

---

[24] This grant of summary judgment excludes any claims on which the court previously concluded that summary judgment was not warranted on account of outstanding factual issues relating to Plaintiffs' affirmative case.